# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL DON MYERS, | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
| vs. | )    Case No. CIV-08-391-D |
| | ) |
| JUSTIN JONES, | ) |
| | ) |
|       Respondent. | ) |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking habeas relief from his state court convictions. United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response has now been filed, and thus the matter is at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions following a jury trial on one count of first degree murder, one count of first degree arson, one count of conspiracy to commit a felony, one count of robbery with a dangerous weapon, and one count of extortionate kidnapping, for which he was sentenced to life without parole, thirty-five years imprisonment, ten years imprisonment, five years imprisonment, and ten years imprisonment respectively, with each sentence to be served consecutively to the others. Case No. CF-2004-

1564, District Court of Oklahoma County[1]; Petition, p. 2[2]; Response Ex. 3, p. 1. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed Petitioner's convictions and sentences on the first four counts, but reversed the conviction for extortionate kidnapping - count five - with instructions to dismiss. Myers v. State, No. F-2005-1011 (Okla. Crim. App. Sept. 6, 2007) (attached to Response as Ex. 3); Petition, p. 2. Petitioner did not seek certiorari or state post-conviction relief. Petition, p. 3-4.

Petitioner raises six grounds for relief. In Ground One, he alleges that there was insufficient evidence to prove that he was either a principal or an aider and abettor in the murder of Richard Hooks. Petition, p. 6. Next, he challenges the sufficiency of the evidence to prove extortionate kidnapping. Id. at 7. In Ground Three, Petitioner claims that his convictions for both extortionate kidnapping and robbery with a dangerous weapon violates the Double Jeopardy Clause. Id. at 9. In Ground Four, Petitioner contends that the evidence was insufficient to support a conviction for first degree arson. Petition, p. 11. Fifth, Petitioner claims that his sentences should be modified due to the trial court's failure to instruct the jury regarding his parole eligibility. Petition, p. 11 Att. Six, and finally, Petitioner claims that his consecutive sentences are excessive and should be modified. Id.

---

[1] Petitioner lists his case under attack as Case No. CF-2003-1370, but that case number is for other crimes of which Petitioner was convicted.

[2] The page numbers used are the pre-printed numbers in the upper right hand corner of the form petition. Thus, page 2 is actually the first page of the petition.

## I. BACKGROUND[3]

"Sometime during the early morning hours of March 4, 2003, Richard Hooks was beaten, stabbed multiple times, and left in a burning garage. His body was discovered by the firefighters called to extinguish the fire." Myers v. State, No. F-2005-1011, slip op. at 2 (Okla. Crim. App. Sept. 6, 2007). On the night of March 3, 2004, Ricky Dale Hester (who was also charged with crimes related to the death of Hooks, but tried separately) was looking for Mr. Hooks because he believed Hooks had made sexual advances toward Hester's mother and possibly his aunt, and was involved in a plan to drug and rape Hester's girlfriend. Response, Ex. 3, p. 3. Because Hester had no car, he asked Petitioner to give him a ride. Hester, Petitioner, and Hester's girlfriend then went to a local pool hall to find Mr. Hooks. Id. The four then left and went to Hooks' apartment to do drugs. Id. at 4. At this time, Hester confronted Hooks about his suspicions, and the matter appeared to "blow over." Hester and Petitioner then went back to the pool hall with Mr. Hooks. Id. at 4.

At some point the party wanted to do more methamphetamine, and so Petitioner went to a drug house to ask the primary occupant, Robert Black, for permission to use a room in the house for a drug deal. Id. at 4-5. There was also testimony that Petitioner also told Black they were going to "slap someone and take their money and their dope and then take them out somewhere and turn him loose." Id. at 5. After receiving permission, Petitioner returned to the pool hall to get the other two and return to the drug house. Id. at 5. The three entered

---

[3] This general background is taken primarily from the statement of facts in Petitioner's brief in chief on direct appeal. Response, Ex. 1, p. 3-7.

the house through the back door. Id.  Hooks was then hit over the head with a flashlight, bound, gagged, stabbed fourteen times, and then was dragged to a detached garage which was set on fire. Id. at 5-6.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal

reasoning, a federal habeas court still owes deference to the result.  Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003).  A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

**III. DISCUSSION**

**A. SUFFICIENCY OF THE EVIDENCE-GROUNDS ONE, TWO, AND FOUR**

In three of the grounds in support of his petition, Petitioner contends that the evidence was insufficient to support his convictions.  Specifically, he claims that the evidence was insufficient to support his conviction for first degree murder as either a principal or an aider and abettor. Petition, p. 6.  He also claims that there was insufficient evidence to prove either arson in the first degree or extortionate kidnapping.  Id. at 7, 11.

Before addressing the merits of Petitioner's claims, the undersigned first notes that the Oklahoma Court of Criminal Appeals reversed Petitioner's conviction for extortionate kidnapping for insufficiency of the evidence.  Response, Ex. 3, p. 7-8.  To the extent Petitioner is raising the same claim he raised on direct appeal, the undersigned finds the claim to be moot.  "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." Aragon v. Shanks, 144 F.3d 690, 691 (10th Cir.1998). The requirement that a petition present a "case or controversy" means that the plaintiff must have suffered an actual injury which can "'be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citation omitted).  In this case,

the State court has already acknowledged the error claimed herein with regard to the kidnapping conviction, and taken corrective action. If the error has been corrected, and done so constitutionally, there is nothing more which can be addressed by a favorable decision herein.[4]

The Supreme Court set forth the standard of review for insufficiency of the evidence claims in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). In that case, the Court held that the relevant question in considering such a claim, "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319; <u>see also</u> <u>Romero v. Tansy</u>, 46 F.3d 1024, 1032 (10th Cir. 1995). This standard gives the trier of fact full responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319. Thus, in applying this standard, this Circuit has held that the Court may not weigh conflicting evidence or consider the credibility of witnesses. <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993). Rather, the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." <u>Id.</u> With this standard in mind, the undersigned will turn to Petitioner's two remaining grounds raising an insufficiency of the evidence claim.

**1. Ground One - First Degree Murder**

---

[4] Moreover, as noted by the Oklahoma Court of Criminal Appeals, the reversal of Petitioner's kidnapping conviction renders Petitioner's double jeopardy claim in Ground Three moot as well. <u>See</u> Petition p. 9; Response, Ex. 3 p. 8.

Petitioner claims that the evidence was insufficient to convict him as either a principal or aider and abettor to first degree murder. Petition, p. 6. Respondent contends that the evidence showed that Petitioner conspired with Hester to rob the victim, transported the victim to the planned site of the robbery, and beat Hooks with a wooden pole during the robbery. Response, p. 6. Thus, he claims the evidence was sufficient to find Petitioner guilty as a principal to the murder. Id.

In rejecting this same claim on direct appeal, the Oklahoma Court of Criminal Appeals stated:

> There is no direct evidence that [Petitioner] stabbed Hooks or caused the blunt force trauma to his head. There is evidence, however, that [Petitioner] was present, assisted Hester in attacking Hooks, and had entered into an agreement to rob and attack him. [Petitioner] told police that he knew Hester planned to rob and beat Hooks. He participated in the planning of the robbery and secured the drug house where the robbery took place. He lured and transported the victim to the house, where he was robbed and ultimately murdered, knowing that Hester was angry with Hooks earlier in the evening and that a fight was likely. He stood guard while Hester obtained the cord to bind Hooks's hands and the flashlight used to incapacitate him and while Hester enlisted Meredith's aid in binding and gagging Hooks. [Petitioner] was present when the robbery occurred and when Hooks was tied up, fatally beaten, and stabbed. He admitted striking Hooks with the wooden stick and breaking it on his feet. Part of the stick was jammed into Hooks's neck and left there. The jury was free to disbelieve [Petitioner's] account minimizing his involvement and knowledge and conclude from the circumstances that he played a larger role in the incident. These circumstances include a statement [Petitioner] made to Hester's girlfriend about his involvement in the incident, including the fact that they went back to burn the garage down to conceal the murder. Hester and [Petitioner] told her that everything had been taken care of. Though [Petitioner] claimed he did not stab Hooks, the murder weapon with Hooks's blood on it was found in his closet. The evidence supports a finding that [Petitioner] was a party to the conspiracy to rob, attack, and possibly murder Hooks and that one of his co-conspirators killed Hooks in furtherance of that conspiracy. Under these circumstances, [Petitioner] is

        responsible for Hooks's murder. The evidence also supports a finding that [Petitioner] aided and abetted in the murder of Hooks based on his admissions and statements to Hester's girlfriend about his involvement and the accomplishment of their objectives. The trial evidence was sufficient to justify [Petitioner's] murder conviction in this case. This claim is denied.

Response, Ex. 3 p. 6-7.

      As noted above, the analysis of a federal habeas challenge to the sufficiency of the evidence begins with consideration of the crime's essential elements. Okla. Stat. tit. 21 § 701.7(A) provides: "A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Thus, the elements of first-degree malice murder are: (1) the unlawful, (2) death of a human, (3) caused by the defendant, (4) with malice aforethought. OUJI-CR 4-61 (Second).

      Sufficient evidence exists to support a conviction for first degree murder when the defendant has participated in a beating despite the medical examiner's inability to pinpoint the fatal blow. <u>Spears v. State</u>, 900 P.2d 431, 438-39 (Okla. Crim. App. 1995). Oklahoma law also provides that persons who aid and abet in the commission of a crime may be convicted as principals. Okla. Stat. tit. 21, § 172 (stating that persons "concerned in the commission of crime , . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals"). Additionally, under Oklahoma law, a defendant charged under an aiding and abetting theory may only be convicted if he or she engages in "acts, words or gestures encouraging the commission of the

offense, either before or at the time of the offense." VanWoundenberg v. State, 720 P.2d 328, 333 (Okla. Crim. App. 1986).

After viewing the evidence in the light most favorable to the prosecution, the undersigned finds that any rational trier of fact could have found all of the essential elements of the crime of murder in the first degree beyond a reasonable doubt. Under the Jackson standard, the trier of fact has full responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. The evidence noted by the Oklahoma Court of Criminal Appeals in its opinion on direct appeal – which must be viewed in the light most favorable to the prosecution – certainly supports a reasonable inference that Petitioner's involvement in the crime was greater than he admitted before the jury. Petitioner was repeatedly impeached with regard to the discrepancies in his stories upon arrest, at the preliminary hearing, and at trial. Trial Tr. Vol. V, p. 45. Rather than repeat the same evidence summarized by the Oklahoma Court of Criminal Appeals on direct appeal, the undersigned notes the location of that evidence in the trial transcripts, and agrees that this evidence combined with obvious efforts at misdirection by Petitioner could lead a rational juror to conclude that Petitioner and Hester planned and executed the death of Mr. Hooks. See Trial Tr. II, p. 207, 215; Vol. III, p. 210, 213, 223, 225; Vol. IV, p. 158, 160, 161, 163, 164, 170-71, 172, 176, 178, 179, 181, 183, 184, 186, 187, 190; Vol. V, p. 25, 28, 29, 31, 32, 45, 46, 47. Accordingly, it is recommended that relief be denied on Ground One.

    **2. Ground Four - First Degree Arson**

Petitioner's argument in Ground Four is that the State failed to prove one of the essential elements of first degree arson – that the garage was inhabited or occupied by a person. Petition, p. 11; Response, Ex. 1, p. 25 (Petitioner's Brief in Chief on direct appeal). More specifically, he argues that the element was not proven because there was no proof that Hooks was alive when the garage was set fire. Id. Thus, he contends that the garage was not occupied by a living person. Id.

Respondent contends that Petitioner's own testimony was that the victim was alive and moving when he was placed in the garage. Response, p. 11. He further notes that the absence of carbon monoxide in Hooks' blood or smoke in Hooks' lungs is not inconsistent with Hooks being alive when placed in the garage, as he could have died shortly thereafter before the fire had generated enough smoke to enter Hooks' blood or lungs. Id. at 12.

In considering this proposition on direct appeal, the Oklahoma Court of Criminal Appeals stated:

> [Petitioner] argues that his first degree arson conviction must be reversed because the State failed to prove that the burned garage was occupied by a "person" because Hooks was already dead when it was set on fire. He cites the medical examiner's testimony that Hooks had no soot in his airway and that his carbon monoxide level was negative to support his contention that Hooks was dead. He contends the dwelling must be occupied by a living person to constitute first degree arson and urges the Court to adopt [this reasoning].

Response, Ex. 3. p. 8-9. After agreeing with Petitioner's premise that a living person must indeed be present to support a conviction for first degree arson, the Court continued:

> We must now review the evidence to determine if there was any evidence that Hooks was alive when the garage was set on fire. [Petitioner]

>testified at trial that Hooks was still moving around when he was taken to the garage. He was sure that he was still alive. Minutes later, the garage was set on fire. Viewing the evidence in the light most favorable to the State, we find that the evidence can support a finding that Hooks was alive when the fire was set, dying before the smoke and carbon monoxide overcame him. The jury's verdict is justified based on [Petitioner's] testimony.

Id. at 9-10.

Under Oklahoma law, the elements of first degree arson are: (1) a willful and malicious; (2) setting fire to; (3) a building; (4) which was inhabited or occupied by one or more persons; (5) caused by the defendant. Okla. Stat. tit. 21, § 1401. As the sole attack on the sufficiency of the evidence is as to the fourth element, the question is whether the evidence viewed in a light most favorable to the prosecution supports proof that Hooks was alive when the garage was set fire. As the Oklahoma Court of Criminal Appeals noted, this evidence is supplied by Petitioner himself. Trial Tr. Vol. IV, p. 189; Vol. V, p. 28. Accordingly it is also recommended that relief be denied on Count Four. Because of the Oklahoma Court of Criminal Appeals' decision reversing the conviction for extortionate kidnapping, it is recommended that relief be denied as moot with regard to the claims contained in Grounds Two and Three.

### B.  GROUND FIVE - ANDERSON ERROR

In his fifth ground for relief, Petitioner contends that the Oklahoma Court of Criminal Appeals denied him due process when it refused to modify his sentences on the basis of its decision in Anderson v. State, 130 P.3d 273 (Okla. Crim. App. 2006), the case which required, as a matter of Oklahoma law, that juries be instructed on the "85% Rule." Under

Oklahoma law, a person who has committed certain enumerated statutory offenses must serve 85% percent of his sentence before being eligible for parole consideration (the 85% Rule). Okla. Stat. tit. 21, §§ 12.1 and 13.1.  Section 12.1 states: "A person committing a felony offense listed in [Section 13.1] on or after March 1, 2000, and convicted of the offense shall serve not less than eighty-five percent (85%) of the sentence of imprisonment imposed within the Department of Corrections." Okla. Stat. tit. 21, § 12.1.  The crimes of first degree murder, first degree arson, and robbery with a dangerous weapon are listed offenses, making the 85% Rule applicable to Petitioner's convictions.

In Anderson, the Oklahoma Court of Criminal Appeals reconsidered the issue of instructing jurors on parole eligibility and held in a published decision that jurors should be instructed on the statutory limitations on parole eligibility under Okla. Stat. tit. 21, §§ 12.1 and 13.1.  The Oklahoma Court of Criminal Appeals specified the holding would have only prospective application. Id. at 283  ("A trial court's failure to instruct on the 85% Rule in cases before this decision will not be grounds for reversal.").  The Anderson decision was issued on February 22, 2006, during the pendency of Petitioner's direct appeal. Compare Certificate of Appeal, certifying filing of Notice of Appeal on Oct. 17, 2005, with Response, Ex. 3 (Opinion on direct appeal, dated Sept. 6, 2006). The Oklahoma Court of Criminal Appeals has held, in at least an unpublished opinion, that the Anderson holding applies to cases that remained pending on appeal at the time the decision was issued.  Locust v. State, Case No. F-2004-997, Summary Opinion at 3-4 (Okla. Crim. App. Apr. 3, 2006) (attached as part of Ex. 1 to the Response).  Petitioner claims that because Anderson was applied in

Locust, and he is similarly situated to the defendant therein, his claim of an Anderson error should have resulted in modification of his sentences as it did in Locust. Response, Ex. 1, p. 31. He contends that his Anderson claim was similar to that in Locust, and that it is a violation of his right to equal protection to deny relief while granting relief to someone similarly situated. Id.

Respondent contends that this issue is one of state law, and that it is not the province of the federal court to reexamine a State court's determination of state law. Response, p. 14.

In addressing this claim on direct appeal, the Oklahoma Court of Criminal Appeals stated:

> Under Anderson and its progeny, it was error not to instruct [Petitioner's] jury on the 85% Rule. Relief for Anderson error is not automatic, however, and this Court reviews the record to determine if the lack of instruction affected the sentence. In this case, the omission of the instruction did not. The jury considered whether [Petitioner] should be eligible for parole in deciding his punishment for first degree murder. The jury decided that [Petitioner] should never be eligible for parole based on his involvement in Hooks's murder. The jury did not request additional information in making its decision, indicating that any sentence with the possibility of parole was unwarranted in its view. The sentences [Petitioner] received for arson and robbery were reasonable based on the circumstances and reflect the level of [Petitioner's] involvement in those crimes. Under the circumstances of this case, the failure to give an 85% instruction is not plain error. The claim is denied.

Response, Ex. 3, p. 12.

For the following reasons, the undersigned finds that the decision of the Oklahoma Court of Criminal Appeals with regard to Petitioner's 85% Rule claim is neither contrary to or an unreasonable application of clearly established Supreme Court law, nor did it result in

13

a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

First, the Oklahoma Court of Criminal Appeals has the authority to modify a defendant's sentence on direct appeal. Carbray v. Champion 905 F.2d 314, 317-318 (10th Cir. 1990) (alteration in original); thus, corrective action by the Oklahoma Court of Criminal Appeals is both authorized under Oklahoma law and constitutional. See Okla. Stat. tit. 22, § 1066; see also Livingston v. State, 795 P.2d 1055, 1058 (Okla. Crim. App. 1990). Because the Oklahoma appellate courts have the authority to exercise their discretion to either modify a jury sentence on appeal – or not – this issue is a matter of state law. Carbray, 905 F.2d at 317-318 (citing Clemons v. Mississippi, 494 U.S. 738, 746 (1990).

Petitioner's equal protection claim is also without merit. First, the Oklahoma Court of Criminal Appeals has specifically held that the trial court's erroneous failure to instruct the jury about the 85% Rule does not require automatic reversal. Brown v. State, 177 P.3d 577 (Okla. Crim. App. 2008). Instead, it is a type of instructional error that is to be reviewed for harmless error. Carter v. State, 147 P.3d 243, 244 (Okla. Crim. App. 2006). Under state law, a judgment can only be set aside for such an error if it has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. Okla. Stat. tit. 20, § 3001.1; Brown, 177 P.3d at 581.

Second, a review of the published decisions concerning whether a sentence should be modified, or the defendant re-sentenced, in light of the trial court's failure to instruct on the 85% Rule reveals that the appellate court will look at things such as: the sentence imposed

relative to the statutory maximum; communication from the jury during deliberation; the defendant's age, criminal history and circumstances of the crime; strength of the evidence of guilt; whether defendant challenges the sufficiency of the evidence; and, whether the evidence as a whole indicates that the jury might have "rounded up" the sentence in an attempt to account for its guess about the impact of parole.  Brown, 177 P.3d at 581; Carter, 147 P.3d at 245; Roy v. State, 152 P.3d 217, 225-226 (Okla. Crim. App. 2006);  Eizember v. State, 164 P.3d 208, 234 -235 (Okla. Crim. App. 2007), cert. denied, 128 S. Ct. 1676 (2008).

Third, the "Equal Protection Clause requires the government to treat similarly situated people alike," Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir.1998), and Petitioner has failed to show the threshold requirement for such a claim: that he is similarly situated to anyone else who has received sentence modifications on the basis of Anderson.  See Harris v. Saffle, No. 01-6074, 25 Fed. Appx. 756, 758 (10th Cir. Nov. 23, 2001) (habeas petitioner "had failed to show that he and his co-defendant were similarly situated and therefore could not meet the threshold requirement for an equal protection challenge") (citations omitted)).[5] Indeed, the Tenth Circuit Court of Appeals has held that the equal protection clause is not implicated when a court reaches different outcomes in cases with different facts.  Jackson v. Hines, No. 07-5133,  268 Fed. Appx. 773, 777 (10th Cir. Mar. 10, 2008).  As the Tenth Circuit held in Jackson:

---

[5] This and any other unpublished disposition are cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

> [Defendant] suggests that the disparate treatment of his claim by the [Oklahoma Court of Criminal Appeals]-affirming his sentence while reversing the sentences of two other defendants who received consecutive sentences from the same trial judge pursuant to her policy-violated his equal protection rights. However, his "argument here comes down to a contention that [Oklahoma] law was misapplied." See Beck v. Washington, 369 U.S. 541, 554 (1962). Despite their apparent similarity, the [Oklahoma Court of Criminal Appeals] found the sentences imposed on two other defendants an abuse of discretion under state law, and not his. This is not a violation of equal protection. The Fourteenth Amendment does not preclude a court from reaching different outcomes in cases with different facts, and even if the court erred, the Amendment does not protect against mere misapplication of state law. Id. at 554-55.

Jackson, 268 Fed. Appx. at 777 (parallel citations omitted). Similarly, in Cummings v. Sirmons, 506 F.3d 1211 (10th Cir. 2007), cert. denied, 128 S. Ct. 2943 (2008), the Court held:

> Cummings attempts, nevertheless, to convert the issue into one involving federal constitutional law by arguing that the [Oklahoma Court of Criminal Appeals'] allegedly erroneous rejection of his argument on direct appeal resulted in (a) a violation of his equal protection rights because he was treated differently than other, similarly-situated Oklahoma criminal defendants, and (b) a violation of his due process right to a fair trial. We reject both arguments. To begin with, Cummings has cited to no United States Supreme Court decisions, and our own independent research has failed to produce any, holding that a state court's erroneous application of state criminal law can result in a violation of a criminal defendant's equal protection rights. Indeed, it would be surprising if such a rule existed, because it would essentially allow state criminal defendants to convert all state law issues raised on direct appeal into constitutional claims cognizable in federal habeas proceedings. In other words, it would require federal habeas courts to review the merits of all state law determinations that were resolved against a state criminal defendant on direct appeal.

Id. at 1237. Thus, Petitioner's contention that the Oklahoma Court of Criminal Appeals erred in failing to modify his sentence raises only an issue of state law, and not a claim under

the equal protection clause.

Moreover, because the Oklahoma Court of Criminal Appeals has held that an <u>Anderson</u> error does not result in automatic reversal, and that instead the case as a whole must be reviewed using a harmless error analysis, <u>Carter</u>, 147 P.3d at 244, the Court has consistently looked to the "specific facts" of each case. <u>See e.g.</u> <u>Roy</u>, 152 P.3d at 226. Petitioner has failed to show that he is similarly situated to any defendant whose sentence was modified, and in light of the individual determination that must be made in reviewing <u>Anderson</u> errors, it is highly unlikely that he could ever do so. Accordingly, even if his contention is viewed as a federal constitutional equal protection claim, it is without merit.

## C. GROUND SIX - EXCESSIVE SENTENCE

In his sixth and final ground for relief, Petitioner asserts that his consecutively running sentences are excessive because they together with the 85% Rule effectively ensure that he will spend the rest of his life in prison. Brief in Support, p. 34. He claims that "it should shock the conscience and decency of this Court that a twenty-two year old man who is already facing Life Without Parole would then be sentenced to an additional total of sixty years imprisonment." Response, Ex. 1, p. 34.

Respondent argues that Petitioner's sentencing claim is a matter of state law that presents no issue for federal habeas review because Petitioner's sentences are within the prescribed ranges. Response, p. 15, 16. Considering this claim on direct appeal, the Oklahoma Court of Criminal Appeals held that "[Petitioner's] consecutive sentences do not

shock the conscience of this Court based on the facts and circumstances of this case." Response, Ex. 3, p. 12.

A state sentence raises federal constitutional concerns when it is grossly disproportionate to the crime committed. Lockyer v. Andrade, 538 U.S. 63, 77 (2003); Hawkins v. Hargett, 200 F.3d 1279, 1281-82 (10th Cir. 1999) (applying Harmelin v. Michigan, 501 U.S. 957 (1991)). In reviewing a sentence for gross disproportionality, a federal habeas court should be reluctant to "interfere with the legislative determination of an appropriate sentence range." Hawkins, 200 F.3d at 1285. If an initial comparison of the offense and the sentence does not lead to an inference that the punishment is grossly disproportionate to the crime, a federal habeas court's examination of the sentence ends. See id. at 1282; see also United States v. Gurule, 461 F. 3d 1238, 1247 (10th Cir. 2006). Moreover, the imposition of consecutive sentences presents no constitutional concern for federal habeas review because "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes." Hawkins, 200 F.3d at 1285 n.5. As stated recently by the Tenth Circuit Court of Appeals, the gross disproportionality principle has rarely resulted in relief from an allegedly excessive sentence:

> Although the Supreme Court has reviewed Eighth Amendment challenges to a number of state and federal sentences, it has struck down only two of them over the past century. In [1910] the Court invalidated under the Eighth Amendment a sentence of fifteen years in chains and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a public document. Seventy-three years later, in [1983], the Court invalidated under the Eighth Amendment a sentence of life imprisonment without the possibility of parole imposed under South Dakota law against a nonviolent recidivist whose final crime was writing a "no account" check with the intent

> to defraud.
>
> In contrast to these two cases, the Supreme Court has rejected Eighth Amendment challenges to the following sentences:
>
> > • A life sentence, with the possibility of parole, under a Texas recidivist statute for successive convictions of (1) fraudulent use of a credit card to obtain $80 worth of goods or services, (2) passing a forged check in the amount of $28.36, and (3) obtaining $120.75 by false pretenses.
> >
> > • A forty-year sentence for possession and distribution of 9 ounces of marijuana.
> >
> > • A life sentence, without the possibility of parole, for possession of more than 650 grams of cocaine.
> >
> > • A twenty-five year to life sentence imposed under a California recidivist statute for the offense of felony grand theft (i.e., stealing three golf clubs worth approximately $1,200).
> >
> > • Two consecutive twenty-five-year to life sentences under a California recidivist statute for two counts of petty theft.
>
> Considered together, these cases clearly support the Supreme Court's recent statement in Andrade that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case.".

United States v. Angelos, 433 F.3d 738, 750 (10th Cir. 2006), cert. denied, 127 S.Ct. 723 (2006) (citations omitted) (citing Lockyer v. Andrade, 538 U.S. 63, 77 (2003)); Haney v. Addison, No. 07-6269, 275 Fed. Appx. 802, 807 (10th Cir. Apr. 30, 2008).

The undersigned finds that Petitioner's consecutive sentences do not warrant federal habeas relief. They fall within the statutory ranges and when viewed individually, are not grossly disproportionate to the offenses committed. Therefore, Petitioner's claim does not

19

present a federal constitutional issue. See id.; Archer v. Ray, No. 06-6083, 188 Fed. Appx. 799, 801 (10th Cir. July 17, 2006). Accordingly, it is recommended that relief be denied as to Ground Six.

### RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. The Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by September 30, 2008, in accordance with 28 U.S.C . § 636 and Local Civil Rule 72.1.  The Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 10th day of September, 2008.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE